Slip-Op. 07-137

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ———————————————————— : | |
| FLORIDA CITRUS MUTUAL, A. DUDA : | |
| & SONS (d/b/a CITRUS BELLE), CITRUS : | |
| WORLD, INC. AND SOUTHERN : | |
| GARDENS CITRUS PROCESSING : | |
| CORPORATION, : | |
| : | |
| Plaintiffs, : | Before: WALLACH, Judge |
| : | Court No.: 06-00114 |
| v. : | |
| : | **PUBLIC VERSION** |
| UNITED STATES, : | |
| : | |
| Defendant, : | |
| and : | |
| : | |
| FISCHER S/A AGROINDUSTRIA, : | |
| CITRUS PRODUCTS, INC., and : | |
| SUCOCITRICO CUTRALE LTDA, : | |
| : | |
| Defendant-Intervenors. : | |
| ———————————————————— : | |

[Plaintiffs' Rule 56.2 Motion for Judgment Upon the Agency Record is DENIED, and the Agency's Determination is AFFIRMED.]

Dated: September 13, 2007

Barnes, Richardson & Colburn, (Matthew T. McGrath and Stephen W. Brophy) for Plaintiffs Florida Citrus Mutual, A. Duda & Sons, Inc. (d/b/a Citrus Belle), Citrus World, Inc., and Southern Gardens Citrus Processing Corporation (d/b/a Southern Gardens).

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michael J. Dierberg); and Mildred E. Steward, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel, for Defendant United States.

Kalik Lewin, (Robert G. Kalik and Brenna Steinart Lenchak) for Defendant-Intervenor Fischer S/A Agroindustria.

<u>Vinson & Elkins L.L.P.</u>, (<u>Christopher Dunn</u> and <u>Valerie Ellis</u>) for Defendant-Intervenors Citrus Products Inc., and Sucocitrico Cutrale Ltda.

## OPINION

**Wallach, Judge:**

## I
## INTRODUCTION

This case comes before the court on a Rule 56.2 Motion for Judgment Upon the Agency Record submitted by Plaintiffs Florida Citrus Mutual, A. Duda & Sons, Inc. (d/b/a Citrus Belle), Citrus World, Inc., and Southern Gardens Citrus Processing Corporation (d/b/a Southern Gardens) (collectively "Florida Citrus" or "Plaintiffs").  Plaintiffs contest aspects of the determination of the U.S. Department of Commerce ("Commerce" or "the Department") in <u>Notice of Final Determination of Sales at Less Than Fair Value and Affirmative Final Determination of Critical Circumstances: Certain Orange Juice from Brazil</u>, 71 Fed. Reg. 2,183 (January 13, 2006) ("<u>Final Determination</u>"), as amended by, <u>Notice of Amended Final Determination of Sales at Less Than Fair Value: Certain Orange Juice from Brazil</u>, 71 Fed. Reg. 8,841 (February 21, 2006) ("<u>Amended Final Determination</u>"). Complaint ¶ 1.  Specifically, Plaintiffs contend that Commerce erred in calculating U.S. price when it offset Respondents' duty expenses by duty refunds received under the U.S. duty drawback program. Memorandum in Support of Plaintiffs' Motion for Judgment on the Agency Record ("Plaintiffs' Motion") at 2. Plaintiffs withdrew their challenge to Commerce's methodology for calculating Cutrale's per unit duty expense in their reply. Plaintiffs' Reply to Defendant and Defendant-Intervenors' Responses to Plaintiffs' Motion for Judgment on the Agency Record ("Plaintiffs' Reply") at 15.  That issue

is therefore not addressed in this opinion.

For the reasons set forth herein, Plaintiffs' Motion is DENIED.

## II
## BACKGROUND

Plaintiffs are domestic producers of orange juice and petitioners in the underlying

investigation resulting in the antidumping order issued as Antidumping Duty Order: Certain

Orange Juice from Brazil, 71 Fed. Reg. 12,183 (March 9, 2006) ("AD Order"). Complaint ¶ 2.

On December 27, 2004 Plaintiffs filed an antidumping petition with the Department of

Commerce and the U.S. International Trade Commission ("ITC") alleging that sales of frozen

concentrated orange juice for further manufacture ("FCOJM") and orange juice not-from-

concentrate ("NFC") from Brazil were materially injuring the domestic industry. Letter from

Matthew T. McGrath, Barnes/Richardson to Donald L. Evans, Sec'y of Commerce, U.S. Dep't of

Commerce (December 27, 2004) ("Petition"), P.R. 1, at 1.  On February 11, 2005, Commerce

launched an investigation into certain orange juice from Brazil. Notice of Initiation of

Antidumping Duty Investigation: Certain Orange Juice From Brazil, 70 Fed. Reg. 7,233

(February 11, 2005).  Commerce selected Citrosuco Paulista S.A. d/b/a Fischer S/A -

Agroindustria ("Fischer"), Sucocitrico Cutrale SA ("Cutrale") and Montecitrus Industria e

Comercio Limitada[1] ("Montecitrus"), the three largest Brazilian orange juice exporters, as

---

[1] Montecitrus withdrew from the investigation before the date of the preliminary
determination and is not party to this case. Issues and Decision Memorandum for the
Antidumping Duty Investigation of Certain Orange Juice from Brazil, from Stephen J. Claeys,
Deputy Assistant Sec'y for Import Admin., to David M. Spooner, Assistant Sec'y for Import
Admin., U.S. Dep't of Commerce (January 6, 2005) ("Decision Memo") at 1.  Consequently the
final antidumping duty margin for Montecitrus was based on adverse facts available. Id.

mandatory respondents in the investigation. Memorandum from Elizabeth Eastwood, et al.,

Analysts, AD/CVD Operations, U.S. Dep't of Commerce to Louis Apple, Office Dir., AD/CVD

Operations, U.S. Dep't of Commerce (March 14, 2005), P.R. 95, at 1-2.  On March 7, 2005,

Commerce dispensed the standard antidumping duty questionnaires to the companies subject to

the investigation. See Letter from Shawn Thompson, Program Manager, AD/CVD Operations to

Christopher Dunn, Willkie Farr & Gallagher (March 7, 2005), P.R. 86, at 1-2.  In accordance

with Section C of the questionnaire, respondents are requested to report the "unit amount of any

customs duty paid on the subject merchandise." Id. at C-20.  In response, Fischer and Cutrale

reported their U.S. import duties net of the refunds they received under the U.S. drawback

program. Decision Memo at 1.  In the course of the investigation Fischer and Cutrale argued the

refunds they received under the U.S. duty drawback program should be used to offset U.S. duties

paid on subject merchandise during the period of investigation ("POI"). Id. cmt. 5 at 29.

     Fischer and Cutrale claimed and received drawback refunds under 19 U.S.C. § 1313(b)

and § 1313(j)(2) respectively.  Drawback is defined as "the refund or remission, in whole or in

part, of a customs duty, fee or internal revenue tax which was imposed on imported merchandise

under Federal law because of its importation . . . ." 19 C.F.R. § 191.2(i).  The U.S. duty

drawback program permits importers to claim reimbursement of 99 percent of U.S. duties paid

on imports when "commercially interchangeable" merchandise is exported from the United

States or destroyed within a 3-year period from the date of importation. 19 C.F.R. § 191.32; see

generally 19 U.S.C. § 1313.  The right of the importer to claim duty drawback vests when

merchandise subject to U.S. duties enter the country. 19 C.F.R. § 191.  As a practical matter, U.S.

Customs and Border Protection ("Customs" or "CBP") receives a deposit of the U.S. duties due

from the importer which is later adjusted if the importer exercises its drawback rights in a timely

fashion. Decision Memo at 29-31; <u>see also</u> Defendant-Intervenor's Memorandum in Response to

Plaintiffs' Motion for Judgment on the Agency Record ("Cutrale's Response") at 8-9.

There are several types of drawback under the statute.  Section 1313(b), claimed by

Fischer, allows "substitution" drawback if an importer performs further manufacturing on the

merchandise after importation. 19 U.S.C. § 1313(b); Decision Memo at 29; Defendant-

Intervenors' Brief in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record

("Fischer's Response") at 2.  Any merchandise "of the same kind and quality" as the imported

merchandise which is used in the manufacturing or production of articles within the specified

time-frame will deem the importer eligible for the refund "upon the exportation or destruction"

of the substituted merchandise. 19 C.F.R. § 191.22(a).  Cutrale claimed drawback under section

1313(j)(2) which provides for "substitution of unused drawback." Cutrale's Response at 5; 19

U.S.C. § 1313(j)(2).  Under this provision, merchandise which is unused and exported, or

destroyed, before a 3-year period, and is "commercially interchangeable" with the imported

merchandise may be substituted for the imported merchandise and 99% of the duties paid will be

refunded to the importer. 19 U.S.C. § 1313(j)(2).

Commerce recognized the proposed offset as an issue of first impression for the

Department, and whereas in its preliminary determination it disallowed the adjustment,

Commerce reconsidered its position in its <u>Final Determination</u> and offset U.S. duties paid by

both respondents by U.S. duty refunds received. Decision Memo at 29, 31; <u>see also</u> <u>Notice of</u>

<u>Preliminary Determination of Sales at Less Than Fair Value, Postponement of Final</u>

<u>Determination, and Affirmative Preliminary Critical Circumstances Determination: Certain</u>

Orange Juice from Brazil, 70 Fed. Reg. 49,557 (August 24, 2005) ("Preliminary

Determination"); Final Determination, 71 Fed. Reg. at 2,183.  In the Department's resulting

analysis it calculated constructed export price for Fischer and Cutrale by adjusting U.S. price net

of the refunds received pursuant to 19 U.S.C. § 1677a(c)(2)(A).  Section 1677a(c)(2)(A) requires

that U.S. price shall be reduced by:

> (A) except as provided in paragraph (1)(C), the amount, if any, included in such price, attributable to any additional costs, charges, or expenses, and United States import duties, which are incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States . . . .

19 U.S.C. § 1677a(c)(2)(A).  An antidumping analysis involves a comparison between export

price ("EP") or constructed export price ("CEP") in the United States and normal value in the

foreign market. 19 C.F.R. § 351.401(a).  Generally under U.S. antidumping laws, EP or CEP is

the price at which the goods under investigation are sold, or agreed to be sold, for exportation to

the United States to the first unaffiliated purchaser in the United States. 19 U.S.C. § 1677a(a)-

(b).[2]  Commerce adjusts EP or CEP figures in accordance with the statutory provisions set out in

_____

[2] Under the statute the terms "export price" and "constructed export price" are defined as follows:

> (a) Export price. The term "export price" means the price at which the subject merchandise is first sold (or agreed to be sold) before the date of importation by the producer or exporter of the subject merchandise outside of the United States to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to the United States, as adjusted under subsection (c).

> (b) Constructed export price. The term "constructed export price" means the price at which the subject merchandise is first sold (or agreed to be sold) in the United States before or after the date of importation by or for the account of the producer or exporter of such merchandise or by a seller affiliated with the producer or exporter, to a purchaser not affiliated with the producer or exporter, as adjusted under subsections (c) and (d).

19 U.S.C. § 1677a(a)-(b).

19 U.S.C. § 1677a(c)-(d) to achieve a fair "apples-to-apples" comparison between U.S. price and foreign market value "at a similar point in the chain of commerce." Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed. Cir. 1995). In respect to granting the offset, Commerce explained in its Issues and Decision Memorandum that "the question before the Department is how to determine the amount of 'United States import duties' to be deducted," and that the statutory language does not "preclude consideration of refunds of U.S. import duties paid on subject merchandise and to encompass the net duty experience of the respondents, rather than the gross amount of duties paid to [Customs]." Decision Memo at 30. Commerce furthermore, concluded that the deduction for net import duties is consistent with the statutory mandate to reduce U.S. price by movement expenses, and that its interpretation provides a fair comparison to normal value because "it results in the calculation of the ex-factory price[3] for CEP based on the respondents' actual U.S. customs duty cost experience for importations of subject merchandise." Id. Accordingly, Commerce concluded that the applicable statute did not pose a bar to granting an offset of U.S. duties against drawback refunds. Id.

On February 2, 2006 Plaintiffs filed a ministerial error allegation which asserted that Commerce had erred in calculating dumping margins for Cutrale and Fischer in its Final Determination. Letter from Matthew T. McGrath, Barnes, Richardson & Colburn to Carlos Gutierrez, Sec'y of Commerce, Import Admin., U.S. Dep't of Commerce (February 2, 2006), P.R. 399, at 1-2. Commerce published its Amended Final Determination on February 21, 2006

---

[3] Constructed export price is an approximation of ex-factory price. See, e.g., Thai Pineapple Canning Indus. v. United States, 23 CIT. 286, 293 n.12 (1999) ("CEP is intended to be an approximation of ex-factory price and it is used in place of export price when affiliated U.S. sellers, rather than the exporters, make the U.S. sales.").

in which it corrected various ministerial errors and made adjustments to its original calculations,

but rejected Plaintiffs' overarching allegations on the basis that the offset at issue represented a

chosen methodology, not an error.[4] Amended Final Determination, 71 Fed. Reg. 8,841;

Memorandum from Elizabeth Eastwood et al., Sr. Analyst, AD/CVD Operations, U.S. Dep't of

Commerce to Irene Darzenta Tzafolias, Acting Dir., AD/CVD Operations, U.S. Dep't of

Commerce (February 8, 2006), P.R. at 402, at 1-6.  Commerce published the antidumping duty

order on Certain Orange Juice from Brazil on March 9, 2006. AD Order, 71 Fed. Reg. at 12,183.

On April 6, 2006, Plaintiffs timely commenced a civil action pursuant to 19 U.S.C. §§

1516a(a)(2)(A)(i)(II)-(B)(i). Complaint ¶ 1,3.  On May 23, 2006 and June 6, 2006 respectively,

the court granted Fischer S/A Agroindustria, and Sucocitrico Cutrale Ltda. and Citrus Products,

Inc.'s motions to intervene pursuant to 28 U.S.C. § 2631(j) as interested parties as defined by 19

U.S.C. § 1677(9)(A).  The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). Id. at ¶ 1.  Oral

argument was held on July 25, 2007.

### III
### STANDARD OF REVIEW

When reviewing an agency's final determination this court shall pursuant to statute "hold

unlawful any determination, finding, or conclusion . . . unsupported by substantial evidence on

the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

"Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v.

---

[4] As noted above, Plaintiffs' have subsequently abandoned their claim that Commerce
erred in applying its chosen methodology to the calculation of Cutrale's per unit net U.S. duty
expense. Plaintiffs' Reply at 15.

NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938).  Notably, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966).  Where a case concerns the reasonableness of an agency's statutory or regulatory interpretation, the standard of review is guided by the Supreme Court's decision in Chevron U.S.A. Inc. v. Nat'l Res. Def. Council Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  Under Chevron, if the statute is silent or ambiguous on the question at issue, the role of the court is to engage in an analysis of whether the agency's interpretation is based on a "permissible construction of the statute." Id. at 843. "[A]n agency's construction need not be the only reasonable interpretation or even the most reasonable interpretation.  Rather, a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another." Koyo Seiko Co. Ltd., v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (citing Zenith Radio Corp. v. United States, 437 U.S. 443, 450, 98 S. Ct. 2441, 57 L. Ed. 2d 337 (1978)).

## IV
## DISCUSSION

### A
### Commerce Appropriately Reduced U.S. Price Net of Refunds the Respondents Received Under the U.S. Duty Drawback Program

Plaintiffs contend that Commerce's decision to offset U.S. duties paid during the period of investigation ("POI") by refunds received under the U.S. duty drawback program in the same period is an "impermissible construction of the statute." Plaintiffs' Motion at 11.  Plaintiffs argue that Commerce erred when it offset refunds received under the drawback program because such

9

refunds are "unrelated" to the merchandise for which U.S. price was determined and not

"incident to bringing the subject merchandise" to the U.S. Id.; see 19 U.S.C. § 1677a(c)(2)(A).

Plaintiffs also contend that "U.S. import duties" cannot be construed to encompass net duties,

and that the statute does not contemplate duty drawback refunds as a legitimate offset to U.S.

import duties. Plaintiffs' Motion at 17-19.  Finally, Plaintiffs assert that the effect of the offset is

to "nullify" the antidumping remedy. Id. at 21.

**1**

**Commerce's Offset was Reasonable and in Accordance with Law**

Plaintiffs argue that U.S. price is distorted by the inclusion of U.S. duty drawback refunds

because the refunds in question are received on exports of unrelated merchandise, resulting in a

skew in the antidumping analysis. Id. at 12-13. Plaintiffs contend that because an importer

receives drawback refunds only upon the exportation of merchandise, the effect of the adjustment

is to adjust subject merchandise upward by duties received for the exportation of non-subject

merchandise. Id. at 16.  Plaintiffs claim that the statutory language which reads that U.S. price

must be reduced by "United States import duties, which are incident to bringing the subject

merchandise from the original place of shipment in the exporting country to the place of delivery

in the United States" indicates that "United States import duties" refers exclusively to expenses

incurred in the importation of the same merchandise and precludes consideration of refunds

received on identical, but unrelated merchandise exported during the POI. Id. at 13-14 (quoting

19 U.S.C. § 1677a(c)(2)(A)).  Plaintiffs draw the conclusion that Commerce therefore erred when

it adjusted for U.S. drawback refunds received during the POI, without consideration of whether

the payments were "qualified for by sales of subject merchandise made during the POI." Id. at 15.

In turn, Plaintiffs argue that the crux of the court's enquiry should be whether the export

transactions that triggered the refunds are directly related to the import sales central to the

antidumping investigation. Id. at 15, 18.  Indeed, Plaintiffs contend the refunds can only be seen

as "inchoate, potential future revenues which must still be qualified for" and that granting an

offset for such exportations "allows foreign exporter to manipulate the calculated dumping

through subsequent and completely independent export transactions that qualify for drawback."

Id. at 18, 13.  Plaintiffs urge that "Commerce is granting respondents an adjustment to U.S.

import duties absent any evidence of a benefit to the first 'unaffiliated U.S. customer,'" contrary

to statute. Plaintiffs' Reply at 10; see 19 U.S.C. § 1677a(a)-(b).  In addition, Plaintiffs contend

that the refunds do not qualify as U.S. import duties because the refunds occurred after the

product was sold in the U.S. and are not reflected in the price of the product, due to the fact that

drawback refunds are reimbursements of duties paid on "commercially interchangeable"

merchandise subsequently exported from the United States. Plaintiffs' Motion at 14-15. Plaintiffs

concede that Commerce under the statute is required to make adjustments to EP or CEP for costs

attributable to "United States import duties" but argue that because Commerce is required to

measure U.S. price and normal value at a "common point in the stream of commerce" this

indicates that the expenses for which U.S. price may be adjusted must have occurred prior to the

sale of the merchandise in the United States. Id. at 14 (citing  Nihon Cement Co. Ltd., v. United

States, 17 CIT 400, 416 (1993)).  In the alternative, Plaintiffs suggest that if the refund occurred

prior to the sale of the merchandise in the U.S., the refund still cannot be related to the sales for

which the adjustment was made because it was received on unrelated merchandise. Id. at 15.

Defendant contends that considering the drawback refunds as an offset to U.S. price

11

constituted a reasonable interpretation of the term "United States import duties" under the statute

and that the Department, absent explicit Congressional intent to the contrary, is entitled to

deference in its interpretation of the statute under the <u>Chevron</u> doctrine. Defendant's Response to

Plaintiffs' Motion for Judgment Upon the Agency Record ("Defendant's Response") at 7.

Defendant argues that the statute does not preclude Commerce from granting the offset and that

drawback refunds are "incident" to the importation of the merchandise within the meaning of the

statute "because the net duties were paid as a result of the importation." <u>Id.</u> at 8.  Because the

statute only requires that U.S. duties at issue be incident to the importation of the merchandise,

Defendant contends that Plaintiffs' argument that Commerce requires proof that the duties paid

affected U.S. price, or the refund saving achieved by the foreign producers is passed on to the

consumer, is misplaced. <u>Id.</u>

The primary issue in this case is whether Commerce permissibly construed the term

"United States Import duties" to include refunds exporters receive under the U.S. duty drawback

program.  The term "U.S. import duties" is not defined in the statute and is therefore subject to

interpretation by the agency.  Commerce has wide latitude in interpreting antidumping statutes

and is entitled to deference under <u>Chevron</u> when the statutory language is ambiguous or unclear.

<u>See</u>  <u>Chevron</u>, 467 U.S. at 843; <u>Smith-Corona Group v. United States</u>, 713 F.2d 1568 (Fed. Cir.

1983).[5]  It is furthermore incumbent on the court to "respect legitimate policy choices made by

the agency in interpreting and applying the statute." <u>Lasko Metal Prods. Inc., v. United States</u>, 43

F.3d 1442, 1446 (Fed. Cir. 1994) (citing <u>Suramerica de Aleaciones Laminadas, C.A. v. United</u>

---

[5] Plaintiff conceded during oral argument that the statutory language in question is ambiguous.

States, 966 F.2d 660, 665 (Fed. Cir. 1992)).

The purpose of making adjustments to U.S. price is to take into account shipping and handling expenses, duties and taxes which may affect U.S. price and normal value differently. See, e.g., Ta Chen Stainless Pipe, Ltd. v. United States, 342 F. Supp. 2d 1191, 1194 (CIT 2004). Section 1677a ensures that U.S. price is reduced by the amount of import expenses incurred by an importer so that a comparison to normal value reflects the value of the merchandise in the home country and in the U.S., absent import or export duties, and results in a fair comparison between the two variables. 19 U.S.C. § 1677a.  There is no statutory requirement that expenses for which U.S. price is being adjusted be related to the merchandise at issue, but merely a requirement that Commerce reduce U.S. price by movement costs which are included in U.S. price. 19 U.S.C. § 1677a(c)(2)(A); Decision Memo at 24.  This court has previously articulated that Commerce must attempt to reconstruct both values at a "common point in the chain of commerce" so as to achieve a fair "apples-to-apples" comparison. Carlisle Tire & Rubber Co. v. United States, 9 CIT 520, 622 F. Supp. 1071 (1985) (citing Smith-Corona Group, 713 F.2d at 1578; see also Nihon Cement Co., 17 CIT at 416.  However, this "point in the chain of commerce" is not fixed, nor is it incumbent on Commerce that the expenses for which it adjusts U.S. price occur exclusively prior to entry of the merchandise into the U.S.  In fact, although Commerce had not developed a practice concerning the treatment of refunds under the drawback program, Commerce has traditionally deducted transportation expenses, warranty costs and claims paid on the merchandise as "movement expenses" although these expenses are generally incurred after the date of importation of the merchandise. See, e.g., Cutrale's Response at 2-3. Plaintiffs suggest a reading of the statute in which the statutory language referring to the price of

13

the merchandise would not be inclusive of the importers' overall business expenses, and where movement costs "incident" to the importation of goods is constructed so narrowly that it may not reflect the actual duty experience of the importer. Plaintiffs' Motion at 14. It is unclear from Plaintiffs' reasoning how such a reading would achieve a fairer or more accurate comparison between U.S. price and normal value. Indeed, Commerce's decision to offset the drawback refunds is not barred by the statute, but is a policy decision which was made within the statutory scheme and is well within the bounds of the agency's discretion in accordance with <u>Chevron</u>.

Furthermore, Plaintiffs' contentions that the refunds at most have an "indirect impact on the seller's cost of doing business in general," and that there was no evidence that "the U.S. drawback funds at issue were in any way included in the price of the U.S. transactions at issue," are unfounded. Plaintiffs' Motion at 13, 15; <u>see also</u> Plaintiffs' Reply at 3. In the period between the preliminary determination and the final determination, Commerce requested supplemental information from both respondents and conducted a comprehensive review of the records in which it requested that both respondents account for the link pertaining to the duties paid and the subsequent refunds. <u>See, e.g.</u>, Fischer's Response at 6-7 (quoting Letter from Shawn Thompson, Program Manager AD/CVD Operations, Dep't of Commerce to Robert Kalik, Kalik Lewin (August 10, 2005)), P.R. 276, at 2; <u>see also</u> Letter from Dep't of Commerce to Robert Kalik, Kalik Lewin (August 24, 2005), P.R. 310 (request for verification of information). Respondents submitted thorough responses, which were verified by Commerce, and that subsequently led Commerce to the conclusion that the offset was a legitimate component of U.S. price and therefore could be appropriately adjusted for pursuant to 19 U.S.C. § 1677a(c)(2)(A). Letter from Robert Kalik, Kalik Lewin to Carlos Gutierrez, Sec'y of Commerce, Dep't of Commerce (May

18, 2005).  Commerce correctly stated in its Issues and Decision Memorandum that section

1677a(c)(2)(A) only requires that the Department "reduce U.S. price by all movement costs

which are 'included' in the starting price" but does not bar Commerce from making that

adjustments if those are not reflected in the purchaser's net outlay. Decision Memo at 31.  In

addition, contrary to Plaintiffs' contentions the statute does not require that the adjustments made

to U.S. price in the form of refunds must be passed directly on to the consumer.  In fact, when

defining the term "price adjustment" in its regulations, Commerce commented that "price

adjustments are not expenses, either direct or indirect.  Instead, price adjustments include such

things as discounts and rebates that do not constitute part of the net price actually paid by a

customer." <u>Antidumping Duties; Countervailing Duties</u>, 62 Fed. Reg. 27,296, 27,344 (May 19,

1997); <u>see also</u> 19 C.F.R. § 351.102.[6]

**2**
**<u>Commerce's Decision to Consider Respondents' Refunds Movement Expenses and
Calculate Net Duty Liability was Reasonable and in Accordance with Law</u>**

Plaintiffs argue that the only permissible adjustments pursuant to 19 U.S.C.

1677a(c)(2)(A) are related to amounts "incident to bringing the subject merchandise" into the

United States and that the "duties imposed by law at the time of importation of the subject

merchandise are the only import duties that meet these terms." Plaintiffs' Motion at 17.

Plaintiffs contend that some adjustments to U.S. import duties may be made in cases where

duties were overpaid and later refunded by CBP, but that the adjustment as relating to drawback

refunds is contrary to the statute because drawback refunds are contingent on a subsequent action

---

[6] The term "price adjustment" is defined as "any change in the price charged for subject
merchandise or the foreign like product, such as discounts, rebates and post-sale price
adjustments, that are reflected in the purchaser's net outlay." 19 C.F.R. § 351.102(b).

15

and therefore does not reflect a cost of bringing merchandise into the country. Id.  Plaintiffs also

contend that the time lag between filing for drawback refunds and receipt of the refunds distorts

any cost adjustment during the POI because the refunds relate to importations years prior to the

costs for which they are adjusted. Id. at 18.  Indeed, in Plaintiffs' Reply they contend that even if

the court finds the adjustment made by Commerce appropriate, that Commerce erred by adjusting

U.S. import duties paid on shipments during the POI by refunds received, also during the POI,

but relating to importations and sales that occurred prior to the POI. Plaintiffs' Reply at 12.

Defendant argues that Commerce reasonably concluded that "United States import

duties" pursuant to statute may take into account refunds received under the duty drawback

program because it more accurately reflects the foreign producer's actual duty experience.

Defendant's Response at 8.  Defendant contends that Plaintiffs fail to demonstrate that ignoring

such funds would lead to a more accurate dumping margin. Id.  Furthermore, Defendant argues

that drawback refunds may be considered movement expenses and while the refunds are

dependent on the subsequent exportation of goods, the statute does not bar adjustments for

contingent duties or expenses. Id.  Defendant also contends that Commerce's methodology of

permitting refunds received during the POI to be offset by the U.S. duties for which the

respondents were liable was reasonable given the time lag between the exportations for which the

refunds are claimed and the receipt of the refunds. Id.

Commerce acted reasonably and in accordance with law by determining the importers

true duty liability in calculating CEP, based on the difference between duties for which the

importers are liable and refunds to which they are entitled within the POI.  Commerce calculated

each respondent's per unit U.S. duty liability net of the drawback refunds received, which

16

resulted in the total net U.S. duties for which the respondent was liable during the POI. Cutrale's

Response at 8. This offset reflects Fischer and Cutrale's net duty liability and therefore is an

adjustment which is consistent with the language of the statute as pertaining to "United States

import duties" as movement expenses incident to brining merchandise into the country. In its

analysis, Commerce accounted for the fact that companies have three years in which to file an

application for duty drawback refunds and that the time lag invariably will cause discrepancies

between duties received during the POI and duties for which the offset is being granted. Decision

Memo at 30. Commerce however, concluded that while duties paid on imports and refunds

granted on exports may not correspond, "it would be unreasonable to conclude . . . that

substitution drawback programs do not impact a company's net duty cost." Id. In addition,

although Commerce had not previously dealt with the issue of drawback refunds as an offset, it

has generally calculated the net cost to the importer less movement expenses such as

warehousing and freight costs. In this case there is no reason why Commerce should consider the

respondents' gross costs as a basis for its calculation of U.S. price when companies engaged in

import and export of merchandise factor in refunds to which it is entitled in its estimation of its

overall duty liability and in its price calculation. Any other reading of the statute distorts the

accuracy of Commerce's calculation of U.S. price more than were such refunds to be ignored.

Plaintiffs' main contention is that the adjustment does not result in a fair comparison of CEP to

normal value. Plaintiffs, however, fail to explain how an adjustment of gross duties, as opposed

to net duties, would result in a fairer comparison. Under Plaintiffs' scenario, the appropriate

calculation would not take into account refunds received by the importer and therefore not

represent the real duty experience of the foreign companies.

**3**
**The Intent and Purpose of the Statute is not Undermined by the Inclusion of the Refunds in the Adjustment to U.S. price and does not "Nullify" the Antidumping Remedy**

Plaintiffs argue that the offset granted by Commerce is contrary to the statutory language referring to "United States import duties," and to the purpose of the statute, which is to make adjustments to U.S. price that result in a fair comparison between normal value and U.S. price. Plaintiffs' Motion at 11-12 (citing 19 U.S.C. § 1677b(a)[7]; Ta Chen, 342 F. Supp. 2d at 1194. Plaintiffs argue that because the statute requires that Commerce make an upward adjustment to U.S. price based on foreign government rebates or failure to collect duties, the statute would have explicitly stated that U.S. drawback refunds could permissibly be offset as U.S. import duties, had that been the case. 19 U.S.C. § 1677a(c)(1)(B); Plaintiffs' Motion at 18-19. In fact, Plaintiffs argue that Congress' failure to explicitly permit an offset of drawback refunds indicates that the concept was rejected. Id. at 19. Plaintiffs argue that permitting the offset acts as a "nullification of the antidumping remedy." Plaintiffs' Motion at 21. Plaintiffs furthermore contend that because Congress in 1988 amended 19 U.S.C. § 1677h to make antidumping and countervailing duties ineligible for refunds as "regular customs duties" under the drawback program, the offset would act to create an unintentional overlap between the antidumping remedy and the drawback program and undermine the purposes of both laws. Id. at 20. Plaintiffs contend that under this scheme the domestic industry will suffer because respondents will continue to dump their merchandise and offset the pricing by pre- and post-sale exports of nonsubject merchandise. Id.

---

[7] 19 U.S.C. § 1677b(a) provides that:
> In determining under this title whether subject merchandise is being, or is likely to be, sold at less than fair value, a fair comparison shall be made between the export price or constructed export price and normal value.

18

at 20-21.  Plaintiffs speculate that respondents may import input products at dumped prices, then

re-claim the duties it paid on the input by exporting the finished product, receive drawback

refunds, and in turn erase the dumping margin on the import sale. Id. at 21.

Defendant argues that the statutory inclusion of foreign refunds in the adjustment to U.S.

price does not indicate Congressional intent that Commerce ignore refunds received by importers

under the duty drawback program. Defendant's Response at 15.  Defendant asserts that Plaintiffs'

argument is flawed and that Plaintiffs' reasoning pertaining to the calculation of a hypothetical

dumping margin is circular. Id.  Defendant furthermore, concludes that differing purposes of the

antidumping and drawback statutes is irrelevant to the offset in question. Id.

The antidumping statute is intended to "protect domestic manufacturing against foreign

manufacturers who sell at less than fair market value." Koyo Seiko Co., Ltd. v. United States, 20

F.3d 1156, 1159 (Fed. Cir. 1994) (citing Smith-Corona Group, 713 F.2d at 1575-76).  The

purpose of the drawback statute is "to relieve domestic processors and fabricators of imported

dutiable merchandise, in competing for export markets, of the disadvantages which the duties on

the imported merchandise would otherwise impose on them . . . ." S. Rep. No. 2165 (1958),

reprinted in 1958 U.S.C.C.A.N. 3576, 3577 (1994), H. Rep. No. 103-826(I), 103rd Cong., 2nd

Sess. 60 (1994).  There is no indication that the antidumping remedy is affected by adjusting U.S.

price by taking into account refunds received under the drawback program.  Furthermore,

Congressional intent to include foreign refunds in the statute cannot be equated with an

interpretation that it was Congressional intent to exclude domestic refunds. See 19 U.S.C. §

1677a(c)(1)(B); but see 19 U.S.C. § 1677a(c)(2)(A).  The rebate or failure to collect duties under

19 U.S.C. § 1677a(c)(1)(B) cannot be considered an adjustment of net or gross duties and it was

therefore incumbent on Congress to make specific reference to such rebates. Furthermore, pursuant to 19 U.S.C. § 1677a(c)(2)(A) Commerce is required to make adjustments to U.S. price irrespective of whether any refunds have been granted. The question is therefore not whether the statute specifically authorizes the deduction of net duties, but whether it prohibits the offset. In fact, pursuant to statute, the drawback refunds in question can only be granted if subject merchandise is imported into the country, and contrary to Plaintiffs' characterization, is not purely contingent on the subsequent exportation of the merchandise. See Plaintiffs' Motion at 18; see also 19 U.S.C. § 1677a(c)(2)(A). As noted by Fischer, a drawback claim is only successful if the importer "provide[s] to Customs proof that the actual importation has taken place and that all duties on the importation were paid." Fischer's Response at 6. Because the importers pay import duties on a sale by sale basis, each drawback claim is tied to an actual U.S. sale and each refund is related to that sale. The fact that a specific refund does not correspond to the same sale for which the adjustment to U.S. price is made is irrelevant under the statutory scheme. Here, the refunds to which the respondents were entitled were clearly included in U.S. price and therefore correctly adjusted for by Commerce.

As an alternative argument, Plaintiffs suggest that if drawback refunds are considered in the calculation of antidumping duty margins they should be considered as an offset to indirect selling expenses as a potential future revenue stream, because such refunds "have nothing directly to do with the price paid for respondents' merchandise in the U.S. market, but result from the indirect expenses of a company doing business in the U.S. market." Plaintiffs' Motion at 21-22 (citing Federal Mogul Corp. v. United States, 18 CIT 785, 862 F. Supp. 384 (1994)); see also Plaintiffs' Reply at 14. Because the offset in question concerned refunds that were well

within the meaning of the statute and Commerce acted within its discretion to interpret the statute, the court need not reach a conclusion pertaining the characterization of the drawback refunds as indirect selling expenses.

**V**
**CONCLUSION**

For the foregoing reasons, Commerce's <u>Final Determination</u>, 71 Fed. Reg. 2,183 (January 13, 2006), as amended by <u>Amended Final Determination</u>, 71 Fed. Reg. 8,841 (February 21, 2006), as set forth above is affirmed.

_/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated: September 13, 2007
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                      :
FLORIDA CITRUS MUTUAL, A. DUDA        :
& SONS (d/b/a CITRUS BELLE), CITRUS   :
WORLD, INC. AND SOUTHERN              :
GARDENS CITRUS PROCESSING             :
CORPORATION,                          :
                                      :
          Plaintiffs,                 :       Before:      WALLACH, Judge
                                      :       Court No.:   06-00114
     v.                               :
                                      :
UNITED STATES,                        :
                                      :
          Defendant,                  :
     and                              :
                                      :
FISCHER S/A AGROINDUSTRIA,            :
CITRUS PRODUCTS, INC., and            :
SUCOCITRICO CUTRALE LTDA,             :
                                      :
          Defendant-Intervenors.      :
_____:
```

## <u>ORDER AND JUDGMENT</u>

This case having come before the court upon Plaintiffs' Motion for Judgment Upon the Agency Record ("Plaintiffs' Motion") submitted by Florida Citrus Mutual, A. Duda & Sons, Inc. (d/b/a Citrus Belle), Citrus World, Inc., and Southern Gardens Citrus Processing Corporation (d/b/a Southern Gardens); the court having reviewed all papers and pleadings on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; it is hereby

ORDERED ADJUDGED AND DECREED that Plaintiffs' Motion is DENIED; and it is further

ORDERED ADJUDGED AND DECREED that the decision of the U.S. Department of Commerce ("Commerce") in <u>Notice of Final Determination of Sales at Less Than Fair Value and Affirmative Final Determination of Critical Circumstances: Certain Orange Juice from Brazil</u>, 71 Fed. Reg. 2,183 (January 13, 2006), as amended by <u>Notice of Amended Final Determination of Sales at Less Than Fair Value: Certain Orange Juice from Brazil</u>, 71 Fed. Reg. 8,841 (February 21, 2006), is hereby AFFIRMED; and it is further

ORDERED that all parties shall review the court's Opinion in this matter and notify the court in writing on or before Thursday, September 20, 2007, whether any information contained in the Opinion is confidential, identify any such information, and request its deletion from the public version of the Opinion to be issued thereafter. The parties shall suggest alternative language for any portions they wish deleted. If a party determines that no information needs to be deleted, that party shall so notify the court in writing on or before September 20, 2007.


_/s/ Evan J. Wallach_____
Evan J. Wallach, Judge


Dated: September 13, 2007
       New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____   By: _____
Deputy Clerk